Jones, J.
(dissenting). I am in agreement with the majority that the exclusionary rule should not be extended to exclude the introduction of evidence otherwise seized without violation of a defendant’s constitutional rights (as, for instance, pursuant to a validly issued search warrant) merely because the police engaged in illegal activity collateral to the discovery of the evidence, provided that the seizure was not the consequence of any exploitation of that illegality. The recognition of that principle, however, does not dispose of the appeal in this case. It is defendant’s contention that here the seizure occurred when, after the police had entered his apartment before a search warrant had been obtained, they “secured” the apartment, and accordingly that the seizure was the direct consequence of illegal action on the part of the police. I agree with this contention.
Although it is true that the police did not at the time of their initial entry conduct a search for the contraband nor did they take possession of the drugs for the purpose of removing them or otherwise exercising dominion over them, it was the purpose and effect of their action at that time to exclude defendant and others from access to or any further control over any drugs in the apartment. The critical determination for purposes of applying the constitutional proscriptions against unreasonable seizures is whether a proscribed seizure occurs when the police action operates to exclude the defendant from access and dominion, thus effecting a “forcible dispossession of the owner” (see Hale v Henkel, 201 US 43, 76), or only when the police act to establish their own control and dominion over the articles seized.[1] The constitutional proscriptions are framed from the perspective of the owner defendant and
*40 not from that of the police. Thus, the formulation is with respect to the “right of the people to be secure * * * against unreasonable * * * seizures” (i.e., protection of the people’s right to dominion and control), not with respect to a prohibition against unreasonable seizures by the police (i.e., prohibition against police exercise of dominion and control). The proscribed trespass on the rights of the defendant occurs when he is barred from access to and possession of his property.
Accordingly, in this case the seizure of the contraband occurred, after the police had entered, when they secured defendant’s apartment. We must, therefore, determine whether this seizure constituted a violation of defendant’s constitutional rights. On this issue the record supports the conclusion of the Appellate Division that, although probable cause existed for an entry and search of the apartment and the seizure of any contraband found therein, there were no exigent circumstances to justify such a search and seizure without a warrant. Because the seizure here occurred in con sequence of an illegal entry, the evidence then seized (and later reduced to police possession) was therefore properly suppressed (United States v Crozier, 674 F2d 1293; United States v Allard, 634 F2d 1182; United States v Griffin, 502 F2d 959, cert den 419 US 1050; [2] People v Shuey, 13 Cal 3d 835; State v Ramos, 405 So 2d 1001 [Fla]).
Inasmuch as the seizure of the contraband in this case was the product of the initial, illegal entry into defendant’s apartment, the subsequent issuance of the search warrant based on untainted proof of probable cause may not serve retroactively to dissipate the illegality of the seizure. The so-called independent source exception has no application.
*41 It holds that the exclusionary rule need not be applied where the police have dual courses of access to the evidence seized, one legal and the other illegal. It has never been invoked, however, to deny application of the exclusionary rule to evidence seized in violation of a defendant’s constitutional rights because the police subsequently obtained a search warrant under which they could have seized the evidence without constitutional infirmity. To extend the independent source or the inevitable discovery exceptions to such cases would be to vitiate the salutary requirement that, absent exigent circumstances, although the police have probable cause, they must nonetheless obtain a warrant prior to search and seizure (United States v Allard, 634 F2d 1182, 1186-1187, supra; United States v Griffin, 502 F2d 959, 961, cert den 419 US 1050, supra; State v Ramos, 405 So 2d 1001, 1003 [Fla], supra).[3]
For the reasons stated, I would affirm the order of the Appellate Division.
Judges Gabrielli, Wachtler and Meyer concur with Judge Jasen; Judge Jones dissents and votes to affirm in a separate opinion in which Chief Judge Cooke and Judge Fuchsberg concur.
Order reversed and case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein.

. There may be a rough conceptual analogy in the distinction to be found in the law with respect to governmental interference in the use of private property between the *40 power of the State to regulate use by the owner under the police power and the power of the State to “take” the property or an. interest therein under the law of eminent domain, i.e., between a noncompensable regulation and compensable taking (see French Investing Co. v City of New York, 39 NY2d 587, 593-595). A distinction is drawn between restrictions on the owner’s freedom to exercise control over and to determine the use of the property on the one hand and the government’s right to exercise control and to determine the use to which the property shall be put on the other.

. I cannot accept the distinction the majority would draw with respect to this case. It is true that in Griffin the contraband was in plain view and thus “discovered” by the police on their initial entry, but there was no more nor less a “seizure” of that contraband at that time than there was in the present case, and in my analysis, as I have indicated, it is the question when the seizure occurred that is determinative.

. The cases cited by the majority presenting questions of attenuation (pp 35-37) are inapposite. The difference between us lies not as to whether the seizure of the contraband was insulated from the illegal entry; we differ only as to when the contraband was “seized”. The majority holds that there was no seizure until the police returned with the search warrant; it is my view that the seizure occurred after the initial entry of the police when they secured the apartment. Nothing suggests that the majority would not suppress the contraband if they were to agree that there was a seizure when the police first entered the apartment.